UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. _____

| | |
|---|---|
| MISS MARTA'S INC., DBA THE LEARNING TREE,<br><br>    Plaintiff,<br><br> v.<br><br>THE UNITED STATES OF AMERICA; THE UNITED STATES INTERNAL REVENUE SERVICE<br><br>    Defendants. | **PLAINTIFF'S ORIGINAL COMPLAINT** |

  Plaintiff Miss Marta's Inc. dba The Learning Tree ("The Learning Tree") files this lawsuit seeking a federal tax refund of $394,180.10 plus interest for its Employee Retention Credit for quarters two, three, and four of 2020 and quarters one, two, and three of 2021. Plaintiff is entitled to the refund under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L No. 116-136 § 2301, 134 Stat. 281 (2020) ("CARES Act") and section 3134 of the Internal Revenue Code (I.R.C.) because Plaintiff qualifies for the statutory test for a decline in gross receipts in quarters two, three, and four of 2020 and quarters one, two, and three of 2021. CARES Act § 2301(c)(2); I.R.C. § 3134(c)(2).

  Plaintiff demands a jury trial on all issues triable to a jury.

## NATURE OF THE CASE

  1. In March 2020, the federal government enacted the CARES Act to aid businesses and individuals in response to the unprecedented public health crisis caused by the COVID-19

pandemic. The CARES Act was passed with large bipartisan support in Congress and was signed into law by President Trump.

2. The CARES Act created the Employee Retention Credit ("ERC") for employers who continued to pay qualified wages to their employees during the height of the pandemic in 2020 and 2021.[1] The statute created a tax credit against applicable employment taxes for each calendar quarter in which a business was eligible. *See* CARES Act § 2301(a); I.R.C. § 3134(a).

3. According to the United States Department of the Treasury, the department to which the Internal Revenue Service ("IRS") belongs, the CARES Act and the Coronavirus Response and Consolidated Appropriations Act of 2021 "provided fast and direct economic assistance for American workers, families, small businesses, and industries."[2]

4. Plaintiff, The Learning Tree, qualified for, and applied for, a refund under the ERC program with the IRS. After a lengthy delay, the IRS has failed to process The Learning Tree's claim for an ERC refund. On September 14, 2023, the IRS issued a moratorium on processing ERC claims, effectively disallowing timely submitted ERC claims without review.[3] The IRS has delayed processing ERC claims to such an extent that it has effectively suspended the program.

---

[1] *See* the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), as amended by § 206 and § 207 of the Taxpayer Certainty and Disaster Tax Relief Act (hereinafter the "Relief Act"), enacted as Division EE of the Consolidated Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 3038 (2020) (hereinafter, "Consolidated Appropriations Act"), and American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 8 (2021) (hereinafter, "American Rescue Plan Act") (providing extensions through January 1, 2022).

[2] U.S. Dep't of the Treasury, *About the CARES Act and the Consol. Appropriations Act*, (last visited Aug. 19, 2024), https://home.treasury.gov/policy-issues/coronavirus/about-the-cares act#:~:text=U.S.%20Department%20of%20the%20Treasury,-Search&text=The%20Coronavirus%20Aid%2C%20Relief%2C%20and,%2C%20small%20businesses%2C%20and%20industries.

[3] IR-2023-169 (Sept. 14, 2023).

5. The Learning Tree brings this lawsuit to obtain the credit it is entitled to receive under the CARES Act.

## JURISDICTION & VENUE

6. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1340 and 1346, and under 26 U.S.C. (I.R.C.) § 7422.

7. Venue is proper under 28 U.S.C. § 1391(e)(1) and § 1402 because Plaintiff maintains its principal place of business and/or principal office in this district in Wilmington, North Carolina, and a substantial part of the events giving rise to this action occurred in this district.

## THE PARTIES

### A. Plaintiff

8. Plaintiff, The Learning Tree, is a corporation organized in the state of North Carolina with its principal place of business in Wilmington, North Carolina.

9. The Learning Tree is a day care center that is committed to providing quality childcare to families in Wilmington, North Carolina. The Learning Tree's staff includes experienced teachers who are passionate about early childhood education and undergo extensive training in health, safety, CPR, and first aid. Many of the lead teachers hold credentials in North Carolina early education, and some have advanced degrees in education or related fields. Overall, The Learning Tree aims to support children's growth, development, and well-being through engaging activities, social interaction, and educational experiences. The Learning Tree continued its educational mission in 2020 and 2021.

B. **Defendants**

10. The United States of America and the United States Internal Revenue Service (the "IRS") are the Defendants. The IRS is a bureau within the Executive Branch of the United States government organized within the Department of Treasury tasked with assessing and collecting internal revenue in the United States.

BACKGROUND

A. **Congress drafts the CARES Act in response to the COVID-19 pandemic**

11. In the beginning of 2020, COVID-19 swept through the United States and the federal, state, and local governments issued orders to stem the spread of the disease. Those orders had an expected side effect—they exacerbated the already substantial disruptions to the economy from the pandemic.

12. In March 2020, the CARES Act was enacted to mitigate the economic fallout from widespread business impairments and job losses.

13. The ERC program was a significant part of the CARES Act. The ERC program created a tax credit for employers who continued to pay qualified wages, including some health plan expenses, to their employees. *See* I.R.C. § 3134(c)(3); FS-2020-05 (May 2020); *see also* U.S. Dep't of the Treasury, *Emp. Retention Tax Credit: What You Need to Know,* (last visited Aug. 19, 2024), https://home.treasury.gov/system/files/136/Employee-Retention-Tax-Credit.pdf.

14. By helping businesses maintain their employees, the ERC program intended to create significant benefits for the country, including lowering enrollments in public assistance programs—like Unemployment Insurance and Medicaid—by people who might lose their jobs.

15. Congress and the President wanted the IRS to widely broadcast the ERC program to American businesses, so they could claim its benefits. The IRS was instructed to conduct a public information campaign about the ERC program to encourage businesses to participate. The

CARES Act was amended to require the IRS to work with the Small Business Administration ("SBA") to disseminate information about the tax credit.[4]

B. **The Employee Retention Credit**

16. The original CARES Act, signed into law in March 2020, provided a tax credit equal to 50% of qualified wages paid to employees, up to a maximum of $10,000 per employee of qualified wages for the year 2020.

17. In late 2020, the CARES Act was amended to raise the tax credit and extend its duration. The amendment allowed eligible employers to claim 70% of the qualified wages paid with a cap of $10,000 per employee of qualified wages for each calendar quarter.[5] This increased credit was extended to the first and second quarters of 2021, and eventually through the third quarter of 2021.[6]

18. In sum, an eligible employer could claim a 2020 credit up to $5,000 per employee for the year, and, for 2021, the employer could claim a credit up to $7,000 per employee per quarter.

---

[4] *See* Consolidated Appropriations Act (requiring government "outreach" to business by giving "notice about the credit allowed under this section and the requirements for eligibility to claim the claim"); *see also* U.S. Dep't of the Treasury, *Treasury Encourages Bus. Impacted by COVID-19 to Use Emp. Retention Credit* (Mar. 31, 2020), https://home.treasury.gov/news/press-releases/sm962.

[5] *See* The Relief Act, enacted as the Consolidated Appropriations Act; *see also* I.R.C. 3134(b)(1)(A-B), I.R.C. 3134 (b)(2) (citing § 3134(a), with respect to any calendar quarter shall not exceed the applicable employment taxes (reduced by any credits allowed under sections 3131 and 3132)).

[6] The Relief Act § 207 enacted as the Consolidated Appropriations Act (modifying the cap to 70%); the American Rescue Plan Act (providing further relief of 70% of a cap of $10,000 for the third and fourth quarters of 2021); Infrastructure Inv. & Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (2021) (disallowing the ERC credit for the fourth quarter businesses unless they qualified as a start-up business).

19. Unless otherwise excepted, qualified wages are wages and compensation (subject to Social Security and Medicare taxes) paid by an eligible employer to eligible employees and include the eligible employer's qualified health plan expenses that were properly allocable to such wages.

20. The ERC was terminated for most employers in the fourth quarter of 2021 by the Infrastructure Investment and Jobs Act ("Infrastructure Act"). *See* IR-2021-242 (Dec. 6, 2021). Under the Infrastructure Act, only a recovery startup business may claim the ERC in the fourth quarter of 2021. *Id.*

C. **Qualifications to Claim the ERC**

21. The ERC was available to businesses of many sizes, but an eligible business generally had to meet one of two criteria for a given quarter in 2020 or 2021: (1) a statutorily defined decline in the business's gross receipts when comparing an applicable quarter in 2020 or 2021 with the same quarter in 2019, or (2) the business was fully or partially suspended due to a governmental order during an applicable quarter in 2020 or 2021.

    a. <u>Decline in Gross Receipts in 2020 and 2021</u>

22. A business qualifies as an "eligible employer" if it suffered a statutorily required reduction in gross receipts in 2020 and 2021, as compared to 2019. *See* I.R.C. § 3134(c)(2)(A)(ii)(II).

23. A qualifying quarter for 2020 is a quarter where the business's gross receipts were 50% less than the same quarter in 2019. *See* CARES Act § 2301(c)(2)(B). Once an eligible business has a qualifying quarter for 2020, each following quarter in 2020 may also be an eligible

quarter, ending with the first calendar quarter following a quarter in which the gross receipts exceed 80% of the gross receipts for the same calendar quarter in 2019.[7]

24. A qualifying quarter for 2021 is a quarter when the business's gross receipts were 20% less than the same quarter in 2019. *See* I.R.C. § 3134(c)(2)(A). For 2021, employers may elect into ERC qualification for a calendar quarter by demonstrating a gross receipts reduction of more than 20% in the immediately preceding quarter. *See* I.R.C. § 3134(c)(2)(A) & (B); *see also* IRS Notice 2021-49.

    b. <u>Full or Partial Suspension Due to Governmental Orders</u>

25. A business ***also*** qualifies as an "eligible employer" if it "is fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease of 2019 (COVID-19)." CARES Act § 2301(c)(2)(A)(i); I.R.C. § 3134(c)(2)(A)(ii)(I).

**D.** **The IRS's Refusal to Apply the CARES Act and Its Moratorium**

26. The IRS has decided not to follow the plain text of the CARES Act.

27. In September 2023, the IRS unilaterally announced it was suspending its review and processing of new ERC claims. *See* IR-2023-169 (Sept. 14, 2023). "During the ERC review period, the IRS continued to process claims received prior to September 2023. The agency

---

[7] IRS Notice 2021-20 (Mar. 1, 2021) ("Section 2301(c)(2)(B)(i) of the CARES Act provides that the period during which an employer experiences a significant decline in gross receipts begins with the first calendar quarter beginning after December 31, 2019, for which gross receipts (within the meaning of section 448(c) of the Code) for the calendar quarter are less than 50 percent of gross receipts for the same calendar quarter in the prior year. Section 2301(c)(2)(B)(ii) of the CARES Act provides that the period during which an employer experiences a significant decline in gross receipts ends with the calendar quarter that follows the first calendar quarter beginning after a calendar quarter described in section 2301(c)(2)(B)(i) of the CARES Act for which gross receipts of the employer are greater than 80 percent of gross receipts for the same calendar quarter in the prior year.").

processed 28,000 claims worth $2.2 billion and disallowed more than 14,000 claims worth more than $1 billion." *See* IR-2024-169 (June 20, 2024). The IRS originally suggested its moratorium would end, and processing would resume, at the beginning of 2024. The IRS did not end the moratorium in 2024. The IRS partially lifted the moratorium for cases filed before January 31, 2024, yet the IRS continues to refuse to adhere to the statute.

28. The IRS has claimed that it continues to process claims filed before the moratorium began on September 14, 2023, but it has done so "at a greatly reduced speed . . . ." IR-2023-169 (Sept. 14, 2023). In practice, the IRS has processed very few ERC claims since the moratorium began. The IRS has intentionally stalled the ERC program to such an extent that it has effectively suspended the program altogether.

29. On June 20, 2024, the IRS issued a news release announcing plans to deny tens of thousands of allegedly improper, high-risk Employee Retention Credit claims while beginning to process low-risk claims. *See* IR-2024-169 (June 20, 2024).

### E. The Learning Tree qualifies for the ERC under the gross receipts test of the CARES Act

30. The Learning Tree qualifies for the ERC under the CARES Act because it suffered a substantial decline in gross receipts for the second, third, and fourth quarters (Q2, Q3, and Q4) of 2020 and for the first, second, and third quarters (Q1, Q2, and Q3) of 2021.

31. The Learning Tree is a wholly owned subsidiary of Maynard Holdings, LLC. The financials in this complaint are properly aggregated as required by the CARES Act § 2301(d). The Employee Retention Credit demanded by The Learning Tree is based on The Learning Tree's proportionate share of the qualified wages that gave rise to the credit for each calendar quarter as explained in IRS Notice 2021-20(III.)(B.), Q&A #8.

32. In 2019, The Learning Tree employed fifty-five full-time employees, allowing it to qualify as an eligible business for the ERC in both 2020 and 2021.

33. The Learning Tree's gross receipts for Q2 of 2020 were $151,640.41 as compared to $376,759.49 for Q2 of 2019, showing a roughly 60% decline in gross receipts. Under both the CARES Act and the IRS's guidelines, Q2 of 2020 is a qualifying quarter for The Learning Tree because the gross receipts for Q2 of 2020 were less than 50% of the gross receipts for Q2 2019.

34. Section 2301(c)(2)(B)(ii) of the CARES Act provides that The Learning Tree's period during which it can claim a significant decline in gross receipts for 2020 continues until the calendar quarter *following* the first calendar quarter in which its 2020 quarterly gross receipts are greater than 80 percent of its gross receipts for the same calendar quarter in 2019.[8]

35. The Learning Tree's gross receipts for Q3 of 2020 were $266,975.07 as compared to $356,184.41 for Q3 of 2019, showing a roughly 25% decline in gross receipts. The Learning Tree's gross receipt for Q4 of 2020 were $249,558.46 as compared to $353,919.96 for Q4 of 2019, showing a roughly 29.5% decline in gross profits. Because The Learning Tree's quarterly gross receipts for Q3 and Q4 were not greater than 80 percent of its quarterly gross receipts for Q3 and Q4 of 2019, The Learning Tree qualifies for the ERC credit in both Q3 and Q4 of 2020.

36. The Learning Tree's gross receipts for Q1 of 2021 were $291,100.62 as compared to $374,538.46 for Q1 of 2019, showing a roughly 22% decline in gross receipts. The Learning Tree's gross receipts for Q2 of 2021 were $261,399.11 as compared to $376,759.49 for Q2 of 2019 showing a roughly 30% decline in gross receipts. Under both the CARES Act and the IRS's

---

[8] The eligible period for the gross decline in receipts credit is the period "beginning with the first calendar quarter beginning after December 31, 2019 . . . and ending with the calendar quarter following the first calendar quarter beginning after a calendar quarter described in clause (i) for which gross receipts of such employer are greater than 80 percent of gross receipts for the same calendar quarter in the prior year." CARES Act § 2301(c)(2)(B)(i–ii).

guidelines, both Q1 and Q2 of 2021 are qualifying quarters for The Learning Tree because the gross receipts for those quarter were less than 80% of the gross receipts for the same quarters in 2019.

38. The Learning Tree's Q3 of 2021 is also a qualifying quarter under the IRS's "alternative quarter election," which permits an employer to "determine if the decline in gross receipts test is met for a calendar quarter in 2021 by comparing its gross receipts for the immediately preceding calendar quarter with those for the corresponding calendar quarter in 2019." IRS Notice 2021-23. IRS Notice 2021-49 clarified that the alternative quarter election was extended to include the third and fourth quarters of 2021, and the IRS provided an example that is nearly identical to the situation here:

> As noted in section III.C. of Notice 2021-23, the determination of whether an employer is an eligible employer based on a decline in gross receipts is made separately for each calendar quarter. Thus, employers are not required to use the alternative quarter election consistently. For example, an employer may be an eligible employer due to a decline in gross receipts for the second quarter of 2021 if its gross receipts for the second quarter are equal to 75 percent of its gross receipts in the second quarter of 2019 (i.e., the employer does not rely on the alternative quarter election for the second quarter); the employer could then use the alternative quarter election to be an eligible employer *for the third quarter of 2021*.

IRS Notice 2021-49 (emphasis added). Similarly, The Learning Tree's Q2 2021 is a qualifying quarter due to a 30% decline in gross receipts compared to Q2 2019, so the school may use the "alternative quarter election" to be an eligible employer for Q3 of 2021.

## COUNT I: REFUND FOR GROSS-RECEIPTS-DECLINED

38. Plaintiff, The Learning Tree, incorporates by reference the allegations in Paragraphs 1 to 37 as if fully set forth herein.

39. Plaintiff is an eligible employer under the CARES Act criteria for 2020 and 2021.

40. Under the gross-receipts-declined test, Plaintiff is entitled to an ERC tax refund for Q2, Q3, and Q4 of 2020 and Q1, Q2, and Q3 of 2021, as shown below:

**GROSS RECEIPTS:**

| Year | 2019 | 2020 | 2021 |
|---|---|---|---|
| Q1 | $374,538.46 | | $291,100.62 **(-22.3%)** |
| Q2 | $376,759.49 | $151,640.41 **(-59.8%)** | $261,399.11 **(-30.6%)** |
| Q3 | $356,184.41 | $266,975.07 **(-25%)** | $287,484.39 ***Eligible via Alternative Quarter Election.*** |
| Q4 | $353,919.96 | $249,558.46 **(-29.5%)** | |

41. Plaintiff paid qualifying wages to fifty-five employees during 2020 and 2021.

42. None of the qualifying wages described above were paid with payroll costs from the Paycheck Protection Program (PPP) loan forgiveness. Plaintiff excluded from the eligible wages the qualified wages included in the payroll costs reported on any PPP Loan Forgiveness Application.

43. Plaintiff made a timely and proper claim for the ERC with the IRS. The following list shows when Plaintiff filed its Form 941-X with the IRS for each qualifying quarter and the ERC it claimed for each quarter.

   a. The 941-X for Q2 of 2020 was filed on June 5, 2023, and it claimed an ERC in the amount of $44,084.00 for that quarter.

   b. The 941-X for Q3 of 2020 was filed on June 5, 2023, and it claimed an ERC in the amount of $17,711.50 for that quarter.

   c. The 941-X for Q4 of 2020 was filed on June 5, 2023, and it claimed an ERC in the amount of $83,116.00 for that quarter.

   d. The 941-X for Q1 of 2021 was filed on June 5, 2023, and it claimed an ERC in the amount of $111,489.70 for that quarter.

e. The 941-X for Q2 of 2021 was filed on June 5, 2023, and it claimed an ERC in the amount of $75,811.40 for that quarter.

f. The 941-X for Q3 of 2021 was filed on June 5, 2023, and it claimed an ERC in the amount of $61,967.50 for that quarter.

44. The IRS has failed to process the Plaintiff's valid ERC claim, and, as a result, has not provided the statutorily required refund to Plaintiff.

45. Under I.R.C. § 6611, the United States owes interest on the refund due to Plaintiff "from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days." I.R.C. § 6611(b)(2). Plaintiff overpaid its taxes and is entitled to interest because the IRS has unilaterally refused to honor the credit owed to Plaintiff.

46. Pursuant to I.R.C. § 7422, a refund suit for the recovery of income taxes can be commenced in District Court after a claim for refund has been filed with the Secretary. Under I.R.C. § 6532, no suit pursuant to I.R.C. § 7422 shall begin prior to the expiration of 6 months from the date of filing the claim for refund nor after the expiration of 2 years from the date the IRS notifies the taxpayer that its claim is disallowed.

## COUNT II: ATTORNEYS' FEES AND COSTS

47. Plaintiff incorporates and realleges paragraphs 1 through 46 above.

48. Under I.R.C. § 7430(c)(4)(B), the United States must pay litigation and administrative costs because its position is not "substantially justified." The IRS created a self-imposed moratorium on processing ERC claims, and, as a result, has refused to process straightforward claims like those belonging to Plaintiff.

## PRAYER FOR RELIEF

49. Plaintiff prays for the following relief:

a. A tax refund in the amount of $394,180.10 for the Employee Retention Credit for the following taxable periods: the second, third, and fourth quarter of 2020 and the first, second, and third quarter of 2021;

b. Reasonable attorneys' fees and costs, as allowed by law;

c. Pre-judgment and post-judgment interest, as allowed by law; and

d. Such further relief as the Court may deem just and proper.

Dated: September 26, 2024

/s/ Justin A. Nelson
Justin A. Nelson (Texas State Bar No. 24034766)*
Weston O'Black (Texas State Bar No. 24065830)*
Daniel Wilson (Texas State Bar No. 24070859)*
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713-651-9366
Fax: 713-654-6666
jnelson@susmangodfrey.com
woblack@susmangodfrey.com
dwilson@susmangodfrey.com

/s/ Amanda S. Hawkins
Amanda S. Hawkins (N.C. State Bar No. 50763)
Brooks, Pierce, McLendon, Humphrey
 & Leonard, LLP
Post Office Box 1800
Raleigh, North Carolina 27602
Tel: (919) 573-6216
Fax: (336) 232-9216
ahawkins@brookspierce.com

*Local Rule 83.1 Notice of Special Appearance Forthcoming*

**Attorneys for Plaintiff The Learning Tree**